IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EULISTA DUNN, | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. PJM-11-1960 |
| ERIC PARSONS, et al., | * | |
| Defendants. | | |
| | *** | |

# MEMORANDUM OPINION

Pending are Defendants Eric Parsons, Cody Reed, Andrew Nave, Joseph Harsh, and Nancy Rouse's Motion to Dismiss or for Summary Judgment and Plaintiff's response.[1] ECF Nos. 24 & 30.[2] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff states that while temporarily housed at the Roxbury Correctional Institution ("RCI") he was assaulted by Correctional Officers Harsh and Nave while Correctional Officers Reed and Parsons stood by and watched. He states that as a result of the assault he suffered an asthma attack and his front tooth was broken. ECF Nos. 1 & 4. In his statement to the Internal Investigation Unit, Plaintiff stated that when he arrived at RCI he was placed in the Administrative Segregation Isolation Area (""ASIA") holding cell. Approximately an hour later Parsons told him he was moving to Housing Unit #5. Plaintiff advise Parsons he was not supposed to be placed in Housing

---

[1] Plaintiff has responded to Defendants' dispositive motion (ECF No. 30) but has failed to provide any affidavit, even his own, to contradict Defendants' version of events. Although a Court may treat a verified complaint as an affidavit for purposes of summary judgment, Plaintiff's complaint has not been verified. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Any other documents the party submits may not be considered on a motion for summary judgment unless they are authenticated by either an affidavit or deposition. *See Orsi v. Kirkwood*, 999 F. 2d 86, 92 (4th Cir. 1993). Plaintiff was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison*. *See* 528 F. 2d 309, 310 (4th Cir. 1975); *see also* ECF No. 25.

[2] Plaintiff's motion for extension of time to respond to the dispositive motion (ECF No. 20) is granted nunc pro tunc.

1

Unit #5 due to previous incidents with staff. Plaintiff was, however, transported to Housing Unit #5. A short time later, Parsons came to his cell and advised him he was being moved back to ASIA. After he was placed in the van, Parsons received a call on his radio which said, "I saw him pop his cuff, check him." Parsons unlocked the door and asked Plaintiff if he had popped his handcuffs. While they were talking, Officer Nave jumped into the van, grabbed Plaintiff by his throat, and said "Dunn you haven't changed, you're still a pain in my ass." Officer Harsh then arrived to assist and placed Plaintiff in a sleeper hold which caused Plaintiff to suffer an asthma attack. Plaintiff states he was then dragged and beaten which caused his front tooth to break. He also claims he sustained bruises to his head, face and ribs. He states that the assault continued until he arrived at the dispensary. ECF Nos. 1 & 4, ECR No. 24, Ex. 4, p. 7-8.

The uncontroverted record reveals that Plaintiff, who was on disciplinary segregation status, was transferred from RCI to the North Branch Correctional Institution ("NBCI") on May 1, 2009. ECF No. 24, Ex. 1 & 2. Records demonstrate that Plaintiff has a history of asthma and evaluated by Steven Bray R.N. on November 12, 2009, due to complaints of chest discomfort. Plaintiff stated the pain was sharp and "stabbing like." *Id.*, Ex. 3.

On November 17, 2009, Plaintiff was temporarily transferred to RCI for a court date. *Id.*, Ex. 1 & 4. During the Internal Investigation Unit's ("IIU")investigation of Plaintiff's claim of assault, RCI Acting Chief of Security Major Brezler reported that on November 17, 2009, he had instructed staff that the inmates received at RCI for temporary housing were to be housed in ASIA if they were maximum security status or on segregation status; otherwise, they were to be housed in Housing Unit #5. *Id.*, Ex. 4, pp. 8-9, 21-22. Plaintiff was inadvertently taken to Housing Unit #5. After all the inmates had been secured, Traffic Officer Carter notified Brezler that Plaintiff was to be housed in ASIA. Brezler called Housing Unit #5 to direct staff to move Plaintiff to ASIA when he was

advised that Plaintiff was claiming that he was having an asthma attack and was being escorted to the dispensary. *Id*. The only incident noted that day at RCI was Plaintiff's asthma attack. *Id*., p. 9, *see also* Ex. 5. The IIU investigation revealed no evidence to support Plaintiff's claim that he was assaulted on November 17, 2009. *Id*., p. 22.

Defendant Parsons avers that on November 17, 2009, he was assigned to RCI's Housing Unit #5 as an escort officer. *Id*., Ex. 6. Defendants Reed, Nave, and Harsh aver that on November 17, 2009, they were assigned to RCI's Housing Unit #5. *Id*., Exs. 8, 9 & 10. Parsons states that he received a telephone call from the traffic office advising him that two inmates needed to be picked up. One was held in ASIA and the other was in a holding cell in the receiving area. Parsons arrived at ASIA and was escorted by the ASIA officer to where Plaintiff was being held. Parsons handcuffed Plaintiff, escorted him out of the cell and to the receiving area to pick up the other inmate, and then placed Plaintiff into the transportation van and transported him to Housing Unit #5 without incident. *Id*., Ex. 6.

Parsons then went to the control center of Housing Unit #5. Approximately thirty minutes later, a call was received indicating Plaintiff needed to be returned to ASIA. *Id*., Exs. 6, 8, 9 & 10. Parsons went to Plaintiff's cell and advised him he was returning to ASIA. Plaintiff stated, "I ain't cuffing up. I think you guys are messing with me." After a brief conversation, Parsons gained Plaintiff's compliance. Defendants Reed and Parsons escorted Plaintiff to the transportation van. *Id*., Ex. 6 & 8. As Plaintiff was escorted past the control center in Housing Unit #5, Harsh noticed the his handcuffs appeared loose. *Id*., Ex. 10. Parsons then received a call over the radio from Harsh advising him to check Plaintiff's handcuffs. *Id*., Exs. 6, 8, 9 & 10. When Parsons attempted to check Plaintiff's handcuffs, Plaintiff went into the van and lay on his back, preventing the officers from seeing the handcuffs. Parsons requested assistance from the control center and Nave responded.

Nave entered the van and he and Parsons attempted to check the handcuffs. Plaintiff was uncooperative. Parsons took hold of Plaintiff's feet and Nave took hold of his shoulders. They lifted him out of the van in order to check the handcuffs. The handcuffs were loose. Parsons tightened them. At that point, Plaintiff indicated he was having an asthma attack. He was escorted back into the van and transported to the medical department. *Id*. Parson, Reed and Nave aver that they did not assault Plaintiff and he was not assaulted by any officer in their presence. *Id*., Ex. 6, 8, & 9. Parson avers that he was with Plaintiff the entire time until he was seen by medical staff and further avers that Harsh was not on the scene during the inspection of the handcuffs/extraction from the van. *Id*., Ex. 6.

Plaintiff was escorted to the dispensary on the date of the incident and received a breathing treatment. No other complaints or injuries were noted. *Id*., Ex. 4, p. 61-62 & Ex. 6. He was evaluated by on-site medical staff at NBCI on November 19, 2009. No injuries were observed. *Id*., Ex. 4, p. 1. He was next evaluated by the medical department at NBCI on November 24, 2009. It was noted that his tooth repair was missing. Two "tiny pink" marks were observed on the right side of his forehead. Darkened marks were observed on his right and left wrists. No other injuries were observed. Plaintiff was did not appear to be in any distress or pain. *Id*., Ex. 4, p. 41. He was again evaluated on November 27, 2009, due to his complaints of numbness and pain in his left hand which he attributed to the alleged altercation on November 17, 2009. *Id*., Ex. 11. Plaintiff stated that since November 17, 2009, his left hand and wrist had been numb and painful; however, the nurse noted he had a previous history involving multiple complaints of numbness of his left arm and leg from a stabbing years prior. *Id*., Ex. 11 & 4. Examination revealed no bruising or abrasions. Plaintiff exhibited good pulses, a brisk capillary refill, and no difficulty performing range of motion exercises. *Id.*

**Standard of Review**

Under Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Discussion**

A.  Supervisory Liability

Plaintiff's complaint against Warden Rouse is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens

like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Warden Rouse that resulted in a constitutional injury. Accordingly, his claims against Rouse shall be dismissed.

B.     Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

Defendants deny that Plaintiff was assaulted. They further deny that the force used to check that Plaintiff's handcuffs were secure was excessive. Defendants explain that the force used was minimal and was undertaken in order to keep the facility secure. Moreover, the force used was necessary given Plaintiff's refusal to comply with lawful orders to permit his handcuffs to be examined. Additionally, the force was tempered in that Plaintiff was given an opportunity to comply

with lawful orders before he was removed from the van and his handcuffs examined.  Additionally, when Plaintiff indicated he was suffering from an asthma attack, he was immediately taken for medical attention.  Lastly, there are no medical records that support Plaintiff's bald claims that he was assaulted by Defendants. In light of the foregoing, Defendants are entitled to summary judgment.

**Conclusion**

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted.   A separate Order follows.

March 14, 2012

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE